# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

**WILLIE JEAN BRANDLEY**     *     **CIVIL ACTION NO. 04-2041**

**VERSUS**     *     **JUDGE JAMES**

**LUCKY VILLAGE OF LOUISIANA, INC.**     *     **MAGISTRATE JUDGE HAYES**

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are cross motions for summary judgment filed by plaintiff, Willie Jean Brandley ("Brandley"), and defendant, Lucky Village of Louisiana, Inc. ("Lucky Village"). (Document Nos. 11, 15). For reasons stated below, it is recommended that the plaintiff's motion be **DENIED** and that the defendant's motion be **DENIED in part and GRANTED in part.**

## BACKGROUND

Brandley filed this civil action against the defendant, Lucky Village, alleging violations of the minimum wage and overtime sections of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); wrongful racial and gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); and unpaid wages in violation of Louisiana law, La. Rev. Stat. Ann. § 23:631. Brandley seeks to recover unpaid wages, compensatory and punitive damages, attorneys' fees, and costs.

Between August 2002 and July 2003, Brandley was employed as a waitress at a restaurant owned by Lucky Village, a Louisiana corporation, and managed by Cheng Jie Chen ("Cheng Jie") and his wife, Trisha Chen ("Trisha"). As with other waitresses at the restaurant, Brandley's compensation consisted of an hourly wage of $2.50 plus tips. In compliance with federal and state labor laws, Brandley, under the supervision of managers at Lucky Village, completed time

sheets and tip declarations for every two week period throughout her employment. With the exception of the tip declarations covering the first month of her employment at Lucky Village, nearly every declaration Brandley made was for the same amount: $151.00 for two weeks of work. See Time Sheets, Document Nos. 1072-1086. While Brandley's time sheets indicate that she often worked double shifts, she did this only once or twice a week, and except for the week starting August 26, 2003, in which she worked forty-one hours, she did not exceed forty hours per week.

In October 2002, Brandley complained to Lucky Village's managers about the inappropriate behavior of two coworkers. Brandley claimed that one manager, Cheng Jie, had grabbed her bra strap through her shirt so hard that it broke, and that Cheng Wan, the owner's brother, had hit her on her buttocks. Brandley claims that Lucky Village failed to take any remedial action. On July 8, 2003, Brandley did not report for her scheduled shift. She claims that she was terminated in retaliation for her reporting of the harassment. Lucky Village claims that she quit her job.

## LAW AND ANALYSIS

Summary Judgment Standard

Summary judgment is appropriate when the evidence before the Court shows that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. F.R.C.P. Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" under this standard if the non-moving party has presented sufficient evidence such that a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden in summary judgment and must demonstrate

through portions of the pleadings, depositions, answers to interrogatories, admissions and/or affidavits that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has successfully demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show the opposite. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory unsubstantiated allegations, or by a mere scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

FLSA Claim

Brandley's claim under the FLSA has two prongs: (1) despite receiving a salary partly based on tips, she was not paid the statutorily mandated minimum wage; and (2) she was not properly compensated for overtime that she worked. The FLSA requires that employees be paid not less than the federally mandated minimum wage, which, at all relevant times, was $5.15 per hour, plus overtime pay at a rate of one and one-half times the regular rate of pay for all hours worked in excess of 40 hours in a work week. 29 U.S.C. §§ 206, 207.

**Minimum Wage**

For tipped employees, such as waiters and waitresses, the FLSA provides employers with some flexibility in ensuring that employees receive the minimum wage. Section 3(m) of the FLSA allows an employer to pay tipped employees an hourly rate less than the federal minimum wage by allowing them to credit a portion of the actual amount of tips received by the employee

3

against the required hourly minimum wage. 29 U.S.C. § 203(m). Before an employer may use this tip credit, however, two conditions must be satisfied: (1) the tipped employee must be "informed by the employer of the provisions of this subsection," and (2) "all tips received by such employees [must] have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.*

With respect to computing the maximum amount of tip credit and the minimum cash wage owed to tipped employees, section 3(m) provides, in relevant part:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee . . . shall be an amount equal to --
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on the date of the enactment of this paragraph [August 20, 1996]; and
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

Thus, the statute allows an employer to deduct the amount of tips actually received by an employee from the hourly statutory minimum wage payable to that employee, up to a maximum deduction. The employer must pay each tipped employee an hourly cash wage of at least the amount required by section 3(m) to be paid on August 20, 1996, no matter how much the employee may earn in tips. As of August 20, 1996, the minimum wage was $4.25 an hour, and the tip credit could be as much as one-half, or $2.13 an hour. *See* 29 U.S.C. 203(m) & 206(a) (1995) (amended August 20, 1996). When, effective on and after September 1, 1997, the minimum wage rose to $5.15 an hour, the minimum cash wage for tipped employees of $2.13 was retained, and the maximum tip credit rose to $3.02 an hour. *See* 29 U.S.C §§ 203(m) & 206(a) (1995, 1997). Therefore, Lucky Village was entitled to credit, if it satisfied the two conditions enumerated in section 203(m), up to $3.02 per hour of a waiter's average tips against

4

the minimum wage.

Brandley does not claim that Lucky Village failed to satisfy the two conditions in section 203(m), but instead claims that Lucky Village's managers, Cheng Jie and Trisha, always instructed her to declare $151 in tips even though she may not have earned that much in tips during a particular week. Brandley claims that she was instructed to do this so that it would appear as if Lucky Village was satisfying the minimum wage requirements described above. If this is indeed true, and Brandley did not actually receive the amount of tips that she was instructed to declare, then a violation of the minimum wage requirements of the FLSA exists.

At this time, however, a review of the record demonstrates that numerous issues of material fact exist and that summary judgment is not appropriate on this claim. In support of her claim, Brandley has submitted two affidavits, her own and that of Tina Broadnax, a coworker at Lucky Village, stating that waitresses regularly received less tips than they were instructed to declare. Lucky Village denies Brandley's allegations and has submitted an affidavit from Trisha, the restaurant's manager, stating that Brandley "was always paid minimum wage based upon her reports of tips" and that Brandley "was required to fill in the amount of tips she earned in an evening. Records reveal that plaintiff consistently reported $151.00 per week in tips." Trisha Affidavit, ¶¶ 6,7. Lucky Village has also submitted portions of Brandley's deposition and, in its brief, characterizes Brandley's responses to a series of questions about tips as being "so self-contradictory as to be almost useless."

The conflicting statements in the parties' evidence demonstrates that issues of fact exist about whether Lucky Village's managers actually instructed Brandley to declare an arbitrary amount of tips and whether Brandley, in fact, received less than that amount and therefore did not receive the minimum wage. With respect to Lucky Village's motion for summary judgment, the

undersigned notes that it has only submitted portions of Brandley's deposition and has chosen, peculiarly, to redact individual pages of Brandley's testimony, making it difficult to read the testimony in context. Without providing the Court with a full record, it is impossible to determine that a genuine issue of material fact does not exist. Furthermore, Trisha's affidavit, while stating that Brandley was required to declare her tips, does not dispute Brandley's claim that she was instructed to declare a certain amount. In any event, neither party has submitted any W-2s, pay stubs, or other records that would show whether Brandley actually received less than the minimum wage. It is therefore recommended that both parties' motions for summary judgment on this claim be **DENIED.**

### Overtime

For every hour worked over forty in one work week, an employer must pay an employee an overtime wage: one and one-half times their regular rate. 29 U.S.C. § 207. In this case, Brandley claims that, due to working double shifts, she regularly exceeded forty hours per week and was not paid an overtime wage. In noting Brandley's time sheets, Lucky Village contends that she never worked more than forty hours per week and therefore requests summary judgment. A review of the record supports Lucky Village's contention, except for the week of May 26, 2003, when Brandley worked forty-one hours. (Time Sheets, Document No. 1084). Without reviewing pay stubs or W-2s, however, the Court cannot determine whether Brandley was compensated for this hour. Therefore, as with Brandley's minimum wage claim, a genuine issue of material fact exists, and it is recommended that both parties' motions for summary judgment be **DENIED.**

Title VII

Title VII makes it unlawful for "employers" to discriminate against an individual because

of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Title VII, as with other federal antidiscrimination legislation, does not apply to small businesses. Accordingly, it defines a covered "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 2000e(b). While Title VII does not define "employee," the Supreme Court has stated that, while not subject to a "'shorthand formula or magic phrase,'" *Clackamas Gastroenterology Associates, P.C., v. Wells*, 538 U.S. 440, 450 n.10 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)), "the common-law element of control is the principal guidepost" in determining whether an individual - partner, owner, or non-owner - is an employee. *Wells*, 538 U.S. at 448 (defining "employee" in context of an identical provision of the Americans with Disabilities Act of 1990 ("ADA")). With an individual who may either be an employer or an employee - generally a partner, director, or majority shareholder - the focus is on the extent to which that individual owns and manages the enterprise. *See Wells*, 538 U.S. at 449.

Although Brandley has asserted claims under Title VII for discrimination and retaliation, she has failed to provide any credible evidence to rebut Lucky Village's documentation showing that it did not employ fifteen or more people for the requisite time period under 42 U.S.C. § 2000e(b). First, Cheng Jie, the general manager, sole shareholder, and director of Lucky Village, and his wife, Trisha, are not employees under Title VII and should not be counted toward the fifteen employees necessary to be an employer under Title VII. Although he receives a yearly salary, Cheng Jie, and even Trisha, who does not receive any wages, can hire and fire employees, can assign tasks to employees and supervise their performance, and can reprimand employees for misconduct. Their role as sole owners and managers of Lucky Village precludes them from

7

being considered employees under Title VII. *See Wells*, 538 U.S. at 449. Second, Brandley's argument that Lucky Village exceeded fifteen employees because it employed relatives of Cheng Jie and "various persons of foreign extract on an itinerant basis" is either unsupported or irrelevant. Regardless, even if Lucky Village did exceed fifteen employees at one time or another, Brandley has failed to provide any evidence that Lucky Village did so "for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Conversely, Lucky Village has produced an affidavit and check register supporting its claim that it was not an employer under Title VII. **Thus, it is recommended that summary judgment be GRANTED to Lucky Village on this claim**.

Unpaid Wages Under State Law

> Upon the discharge or resignation of an employee, Louisiana law provides:
>
> [I]t shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

La. Rev. Stat. Ann. § 23:631(A)(1)(a)-(b). An employer may make this final payment in a manner consistent with previous payments to the employee or, instead, mail the payment to the employee's current address as shown in the employer's records. *Id.* at (A)(2). When an employer chooses to mail the employee's final payment, payment is deemed made as of the mailing; however, proof of mailing must exist in the form of a "official United States postmark or other official documentation from the United States Postal Service." *Id.* Both Brandley and Lucky Village have failed to provide sufficient evidence that final payment was or was not made. Although Lucky Village insists that it mailed Brandley's final paycheck to her last known address, it has not submitted any documentation or proof to support that claim. Similarly, Brandley has not submitted proof of how many hours she is still owed. As the record now

stands, a genuine issue of material fact exists; therefore, it is recommended the both motions for summary judgment on this claim be **DENIED.**

## CONCLUSION

For the reasons stated above, it is recommended that the plaintiff's motion for summary judgment be **DENIED** and that the defendant's motion for summary judgment be **GRANTED as to the plaintiff's Title VII claims and DENIED as to all of her other claims.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 1st day of December, 2005.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE